(119 So. 837)

JEFFERSON COUNTY BOARD OF EDUCATION for Use of BENSON PAINT & VARNISH CO. v. UNION INDEMNITY CO. (6 Div. 177.)

Supreme Court of Alabama. Dec. 20, 1928.

As Modified, on Denial of Rehearing, Jan. 24, 1929.

Cabaniss, Johnston, Cocke & Cabaniss, of Birmingham, for appellant.

London, Yancey & Brower and J. Kirkman Jackson, all of Birmingham, and Manning W. Heard, of New Orleans, La., for appellee.

FOSTER, J. This action was brought by Benson Paint & Varnish Company against John Boswell and Union Indemnity Company. By amendment the plaintiff is changed to Jefferson county board of education, suing for the use of Benson Paint & Varnish Company, and by said amendment John Boswell is stricken as a defendant.

The complaint alleges that on January 5, 1926, contract was entered into between Jefferson county board of education, hereinafter referred to as the county board, and John Boswell for the erection of a school building at Springdale, Jefferson county. The contract provided that the contractor shall and will furnish all materials and perform all work for the erection and completion of the building. On January 7, 1926, John Boswell, as principal, and the Union Indemnity Company, as surety, entered into bond with the county board in the penal sum of $12,000, and conditioned in the following language that: "The principal shall faithfully perform the contract on his part, and satisfy all claims and demands incurred for the same, and shall fully indemnify and save harmless the owner from all cost and damage which he may suffer by reason of a failure so to do, and shall fully reimburse and repay the owner all outlay and expenses which the owner may incur in making good any such default, *and shall pay all persons who have contracts directly with the principal for la-*

*bor or materials*, then this obligation shall be null and void; otherwise it shall remain in full force and effect." The complaint alleged that Benson Paint & Varnish Company contracted with Boswell for material used in the construction of the building, which material was furnished and used and has not been paid for. Demurrer was sustained to the complaint, and appellant took a nonsuit on account of the adverse ruling of the court, and assigns it as error. The question is the effect of the provisions in the contract and bond, and whether an action may be maintained on account of and for the benefit of the paint company.

A similar question was considered and determined by this court in the case of Union Indemnity Co. v. State, 217 Ala. 35, 114 So. 415, decided subsequent to the ruling of the trial court in this case, as also the case of Union Indemnity Co. v. State (Ala. Sup.) 118 So. 148.[1] In the former case the statutes and principles of law pertaining to the state highway commission were held to justify the execution of a bond to secure the performance of a contract for road construction, and construed a special provision whereby there was guaranteed "the * * * payment of sums due for 'labor, materials and supplies used in the performance of this contract.'" There was no statute in Alabama authorizing expressly the execution of such a contract with the inclusion of such a stipulation, and there is none which gave similar authority to the county board when the bond here sued on was executed. The Act of 1927, p. 37, had not been enacted. The court held that the highway commission had plenary powers in the construction and maintenance of highways. Section 1328 of the Code merely requires a bond "for the faithful performance of the work agreed and contracted to be done," and that it shall be "conditioned to do and perform the work in accordance with the contract or agreement." This court stated in said case that "we confine our decision to the question of authority to stipulate for the payment of bills for labor and materials as part of the obligation of the contract, and of the statutory bond for its performance." This court reviewed the conflicting authorities of other jurisdictions, and adopted the view of those states which support such provisions, and the right to sue thereon for the benefit of a materialman, though there is no statute which makes specific provision for them. Many authorities, in addition to those there cited, are collated in 49 A. L. R. beginning on page 534.

As illustrative of the principles which were emphasized, it would not be amiss to quote from the case of American Fidelity Co. of Montpelier, Vt., v. State, 128 Md. 50, 97 A. 12, which expresses the view we adopt as applicable to this subject: "Should the fact that neither the act nor the bond expressly state that the laborers and materialmen should have a right of action, or how and where their suits should be brought, deprive creditors such as this appellee from his right of action? In a note to Knight & J. Co. v. Castle, 27 L. R. A. (N. S.) 573, the right of the materialmen and laborers to maintain an action on a contractor's bond is discussed thoroughly and at length, with cases cited to support the text. It is there said: 'An ancient general principle denies an action for the breach of a contract to one who neither made it nor has succeeded to the interest of the one who did make it, notwithstanding he had sustained a damage by the breach, or would have been substantially benefited by the performance of such contract. In later times that general principle became subject to an exception now widely recognized and well established, viz., that a third person for whose benefit others make a contract may in certain circumstances recover upon it against the party to it who defaults in performing the beneficial covenant. The courts have had occasion to act so frequently upon this exception that it has acquired the force of an independent rule of law. Cases arising upon beneficial contracts which required the courts to consider and apply this exception-generated rule have been very numerous and exceedingly varied in character, and the judicial determinations made in them have been discordant and conflicting to a high degree. The cases in which a subcontractor, laborer or materialman has sought recovery upon the contractor's bond or against his sureties, upon the ground that the obligation was entered into for his benefit, constitute a large and important group among the multitude. In all of them the rule has been referred to and in some of them it has been applied. In none has it been denied that the rule applies to this class of cases, but only that particular cases do not fall within its operation.' And it is clear from a study of the cases there cited, and from others that the weight of authority that since the contractor's bond is given not only for the protection of the state under the contract, but equally for the protection of the laborers and the materialmen, that such have a right of action irrespective of whether the express language of the bond or act gives it to them."

We have read with great care and interest the cases cited by appellee. Some of them support its contention; some of them are very strong and ably present their view. We conclude that the views expressed by this court are more in accord with the weight of authority and the liberal principles this court has applied to suits by or for parties for whose direct benefit a contract was made, though not a party to it. Some of the late cases on that subject are: Copeland v. Beard, 217 Ala. 216, 115 So. 389; Meyerson v. New Idea Hosiery Co., 217 Ala. 153, 115 So. 94, 55

A. L. R. 1231; Fite v. Pearson, 215 Ala. 521, 111 So. 15, where the Alabama cases are collated.

The chief ground on which relief is denied in other jurisdictions is a want of privity of contract, that the sureties did not contract with the beneficial plaintiff, and that their contract did not obligate them to pay such beneficial plaintiff, but that they were only obligated to the county board to protect it against any such claims as those of the beneficial plaintiff. The letter of the contract is in accord with this contention. We do not here affirm a policy for this court as applied to contracts and bonds for other than buildings of a public nature. Under such circumstances as pointed out in many cases, the laborers and materialmen have no security by lien for the debt. Properly considered, the clause could not have effect for the protection of the county board. That board did not owe such creditors. They were creditors of the contractor, and had no lien on the property of the county board. For what purpose therefore was such a clause inserted? It could only have been for the benefit of laborers and materialmen. Our case of Fite v. Pearson, supra, is not directly in point, because the bond specifically agreed to compensate certain classes of persons, and gave them specifically a right of action, and plaintiff sued in his own name, as a member of that class. We think our two cases of Union Indemnity Co. v. State, supra, however, are in point here. That case adopts a construction of such bonds by Judge Cooley, applicable when no statute controls. It also adopts the theory of the duty of the public corporation to contract for such materialmen and laborers as a security against fraud and imposition, resulting from the collection by the contractor of the price agreed on, and leaving them unpaid without remedy, except against the contractor, who may be insolvent. It is the policy of the law to make provision for the security of materialmen and laborers. A lien is created from private building contracts, but not from public ones. As pointed out in the case of Union Indemnity Co. v. State (114 So.), supra: "An effective way is to require in advance a bond, with a guaranty company as surety, that this shall not occur." This suit is by the county board for breach of the condition of the bond. The complaint alleges that there was a breach of that condition in the failure to pay a materialman, and, therefore the county board has a cause of action for such breach. But it has not sustained the damage by the breach, but the beneficial plaintiff has sustained the damage. As there was no obligation specifically to pay the beneficial plaintiff, it could not maintain the action in its own name, but, as there was a breach of the bond alleged, and as the beneficial plaintiff sustained the damage, and we hold the bond was for his protection as well as that of the county board, the suit is properly in the name of the county board, for the use of the beneficial plaintiff. It is quite apparent that the beneficial plaintiff was such as was to be directly, as distinguished from one indirectly or remotely, benefited. This distinction is pointed out in our case of Fite v. Pearson, supra. We refer again to the fact that the bond here in question is conditioned upon the payment of laborers and materialmen.

The only remaining question is whether the county board was authorized to make such a contract and accept such a bond. On that subject we refer to the legal status and authority of county boards, as follows: A county board of education exercises control and supervision of the public school system of the county, section 88, School Code of Alabama 1924: It "has general administration and supervision of the public schools, school buildings and educational interests" of the county. Dean v. County Board of Education, 210 Ala. 256, 97 So. 741. "All property and funds for public school purposes are transferred to and vested in said boards and their successors in office." The board is also given authority to borrow money and to condemn property for school purposes, and to sue and contract. "This board" is given "ample power, with rather full supervision of the public school system of counties, and that the school funds are under the control of said board and placed in the custody of a treasurer selected by the board. * * * This board is in fact a quasi corporation * * * and constitutes * * * an independent agency of the State for the purposes * * * enumerated." Kimmons v. Jefferson County Board of Education, 204 Ala. 384, 85 So. 774. "It may sue and contract, all contracts to be made after resolutions have been adopted by the board and spread upon its minutes." Section 106, School Code of 1924; Greeson Mfg. Co. v. Board of Education, 217 Ala. 565, 117 So. 163. The building program of public schools shall be submitted to and adopted by the county board. Section 123, School Code of 1924.

From the foregoing it is concluded that the county board has authority to make the contract and accept a bond from the contractor, and may sue thereon for its breach, either for its own benefit or for the use of another for whose benefit it is stipulated to serve.

It results that the action of the court in sustaining demurrer to the complaint as last amended was not in accord with the foregoing views, and it is reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.